NOT FOR PUBLICATION                                                 (Doc. Nos. 54, 61)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                                         :
ALEXANDER FRANKLIN and                  :
GLORIA FRANKLIN,                               :
                                                         :
                       Plaintiffs,               :        Civil No. 12-7884 (RBK/JS)
                                                         :
            v.                                         :        **OPINION**
                                                         :
FINANCIAL FREEDOM ACQUISITION,  :
LLC, ACCURATE TITLE GROUP, LLC,   :
HOMEAMERICAN CREDIT, INC.,           :
LEND-MOR MORTGAGE BANKERS,       :
CORP., OCWEN LOAN SERVICING,        :
LLC, and DEUTCHE BANK NATIONAL   :
TRUST,                                                  :
                                                         :
                       Defendants.             :
_____ :

**KUGLER**, United States District Judge:

        This matter comes before the Court upon the motion of Defendant Accurate Title Group,

LLC ("Accurate Title") to dismiss the Amended Complaint of Alexander Franklin and Gloria

Franklin ("Plaintiffs") against it, and upon the motion of Defendant Financial Freedom

Acquisition, LLC ("Financial Freedom") to dismiss Plaintiff's Amended Complaint against it.

For the following reasons, Financial Freedom's motion will be **GRANTED IN PART.**  Count I

and Count VI of the Amended Complaint will be dismissed, and the Court declines to exercise

jurisdiction over Plaintiffs' remaining state-law claims.

## I.        BACKGROUND AND PROCEDURAL HISTORY

        This case arises out of several mortgage-related transactions involving the Franklins.  In

November 1998, Mr. and Mrs. Franklin purchased a home at 321 Market Street, in Palmyra,

New Jersey.  Am. Compl. ¶ 17.  In connection with this transaction, the Franklins gave a

mortgage to Defendant HomeAmerican Credit, Inc. ("HomeAmerican").[1]  Id.  In connection

with the same transaction, a mortgage was also placed on a vacant piece of land in Westampton,

New Jersey, which the Franklins evidently owned prior to the purchase of their Palmyra home.

Id.  The HomeAmerican loan was serviced by Defendant Ocwen Loan Servicing, LLC

("Ocwen").  Id. ¶ 19.  On November 16, 2009, the HomeAmerican mortgage was assigned to

Defendant Deutsche Bank National Trust Company ("Deutsche Bank").[2]  Id. ¶ 17.  A notice of

lis pendens was filed against the Franklins' property in connection with the HomeAmerican loan

on October 26, 2004.[3]  Id.

In March 2009, the Franklins entered into a reverse mortgage with Defendant Lend-Mor

Mortgage Bankers, Corp. ("Lend-Mor").  Id. ¶ 18.  It is unclear from the Amended Complaint

whether the Lend-Mor mortgage was placed on the Palmyra property, the Westampton property,

or both.  The Franklins allege that the mortgage with Lend-Mor was intended to pay off the

HomeAmerican loan that originated in 1998, to extinguish the HomeAmerican mortgages on the

Palmyra and Westampton properties, and to extinguish the lis pendens.  Id.  The Lend-Mor

mortgage was assigned in June 2009 to Financial Freedom Senior Funding Corporation.  Id.  In

November 2009, it was then further assigned to Mortgage Electronic Registration Systems, Inc.

("MERS") as nominee for Defendant Financial Freedom Acquisition LLC.  Id.  The Franklins

purchased title insurance in connection with the 2009 reverse mortgage loan through Defendant

Accurate Title.  Id. ¶ 19.

Although the Amended Complaint alleges that Financial Freedom was a subsequent

---

[1] Also referred to in the Amended Complaint as HomeAmerican Credit, Inc. d/b/a Upland Mortgage.
[2] Incorrectly pled in the Amended Complaint as "Deutche Bank."
[3] The lis pendens procedure is governed by N.J.S.A. 2A:15-6.  It is unclear from the Amended Complaint whether the lis pendens was filed against the Palmyra property, the Westampton property, or both.

assignee of the 2009 reverse mortgage loan, and not the originating lender, the Franklins allege

that Financial Freedom induced them to enter into the reverse mortgage loan though promises

that the loan would pay off existing mortgages and other liens on their properties.  Id. ¶ 41.  As a

result of the 2009 reverse mortgage loan, the Franklins' existing mortgages with HomeAmerican

were partially released.  Id. ¶ 17.  Although the Franklins allege that the loan with

HomeAmerican was "paid in full," it is unclear whether they allege that it was paid by the

Franklins, by the entities involved in the reverse mortgage transaction, or both.  Id.

The Amended Complaint indicates that the Franklins did not receive any funds from the

Financial Freedom loan, although they do not indicate whether they received any funds from the

loan involving Lend-Mor.  Id. ¶ 20.  They further allege that they were "tricked" into signing the

mortgage with Financial Freedom, and were promised that all existing mortgages and liens

would be paid and released as a result of the Financial Freedom mortgage. [4]  Id.  The Franklins

charge that Accurate Title and Financial Freedom "orchestrated a fraudulent transaction or had

direct knowledge of the fraud being committed against the Plaintiffs."  Id. ¶ 21.  They accuse

Accurate Title and Financial Freedom of creating fraudulent documents, making unauthorized

payments out of the mortgage proceeds, and receiving disbursements from the mortgage.  Id.

The Franklins also charge that Accurate Title "represented to the Plaintiffs that they would pay-

off all mortgages and liens as of the date of the re-finance mortgage from [Financial Freedom]."

Id. ¶ 44.  They allege that Accurate Title never paid the liens as promised, and that Plaintiffs paid

---

[4] In describing the facts involved in this case, the Court endeavors to use the same descriptions as Plaintiffs, although recognizing that certain descriptions appear to be contradictory.  For example, Plaintiffs make repeated references to "the FFAL [Financial Freedom] loan."  See Am. Compl. ¶ 20.  However, another portion of the Amended Complaint describes the involvement of Financial Freedom as the subsequent assignee of a mortgage loan between Plaintiffs and Lend-Mor.  Id. ¶ 18.  The Court assumes that one relevant reverse mortgage loan was originated in 2009 involving Plaintiffs, that Lend-Mor was the lending bank involved in that loan, and that the mortgage was subsequently assigned to Financial Freedom.  The Court further assumes that this is the loan that Plaintiffs are referring to when referring to "the FFAL loan."  The allegation that Plaintiffs signed a mortgage with Financial Freedom also appears to be at odds with their earlier claim that they signed a mortgage with Lend-Mor, which was later reassigned to Financial Freedom.  See Am. Compl. ¶¶ 18, 20.

substantial fees to Accurate Title for title insurance for a mortgage that was never funded.  Id.

They indicate that they suffered the loss of their home as a result of the actions of the defendants

in this matter.  Id.  The Amended Complaint alleges that Financial Freedom and Accurate Title

improperly failed to provide documentation related to the relevant transactions, despite repeated

requests from Plaintiffs for such documents.  Id. ¶ 47.  They further allege that these two entities

made false representations about the costs of the loan.  Id. ¶ 56.

On December 28, 2012, Plaintiffs filed the present action.  After motions to dismiss the

complaint were filed by Financial Freedom and Deutsche Bank, Plaintiffs filed a motion seeking

to amend their complaint.  After that motion was denied because Plaintiffs did not attach a copy

of a proposed Amended Complaint, Plaintiffs renewed their motion and filed a copy of a

proposed Amended Complaint.  Magistrate Judge Schneider heard oral arguments on Plaintiffs'

motion to amend on July 22, 2013.  Rather than granting Plaintiffs leave to file their proposed

Amended Complaint, Judge Schneider granted Plaintiffs 30 days to file an amended complaint in

any form they chose.  See Transcript of July 22, 2013 Hearing at 17 (Accurate Mot. Dismiss, Ex.

B).  On August 21, 2013, Plaintiffs filed their Amended Complaint, which is the current

operative pleading in this matter.  The Amended Complaint asserts claims against Financial

Freedom under the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and under the Real

Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.  It also asserts state-law

statutory claims under the New Jersey Consumer Fraud Act, and state common law causes of

action for intentional misrepresentation, breach of contract, conversion, breach of fiduciary duty,

and negligence.  While the claims under federal law are only asserted against Financial Freedom,

state-law claims are asserted against all of the defendants.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief may be granted.  With a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A claim may be dismissed as untimely under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).  The statutory bar must be "apparent on the face of the complaint" in order to form the basis for a dismissal under Rule 12(b)(6).  Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).  See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

## III.    DISCUSSION

The Court initially declines the invitation of Financial Freedom to dismiss the entire Amended Complaint against it because it is allegedly only a loan servicer.  The Amended Complaint identifies Financial Freedom as an assignee of the mortgage loan, and not as a

servicer.  Am. Compl. ¶ 18.  Liability under certain causes of action asserted by Plaintiffs may be imposed upon assignees.  For example, "TILA imposes liability only on purchasers and assignees of mortgages," but "loan servicers cannot be liable under TILA."  Stump v. WMC Mortg. Corp., Civ. No. 02-326, 2005 WL 645238, at *10 (E.D. Pa. Mar. 16, 2005).  As the Court's examination must be limited to the four corners of the complaint, the Court must assume that Financial Freedom is an assignee, as the Amended Complaint alleges, and not a servicer, as Financial Freedom urges in its moving brief.  The Court will begin by analyzing the two federal law claims in turn, which are asserted only against Financial Freedom.

### A.       Truth-in-Lending Act (TILA)

"TILA is a federal consumer protection statute, intended to promote the informed use of credit by requiring certain uniform disclosures from creditors."  In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig., 418 F.3d 277, 303 (3d Cir. 2005).  It is designed to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  To that end, TILA requires creditors to provide borrowers with certain disclosures regarding things like finance charges, percentage rates of interest, and borrower's rights.  See 15 U.S.C. §§ 1631, 1632, 1638.  A creditor who violates TILA may be subject to criminal penalties, in addition to statutory and actual damages relating to a creditor's failure to make the required disclosures.  See 15 U.S.C. §§ 1611, 1640.

In addition to providing a right to damages, TILA also permits a borrower whose loan is secured with a "principal dwelling" to rescind the loan transaction entirely until "midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing

the material disclosures required under this subchapter, whichever is later." 15 U.S.C. § 1635(a).

If the lender fails to provide or deliver the appropriate forms and disclosures, the obligor's right

of rescission will extend for three years after consummation of the transaction.  15 U.S.C. §

1635(f).

In the Amended Complaint, Plaintiffs assert a TILA cause of action against Financial

Freedom, alleging that it failed to deliver the appropriate disclosures to Plaintiffs in connection

with the right to rescind.  Plaintiffs also allege that Financial Freedom required them to proceed

with the reverse mortgage transaction prior to disclosing the actual financing terms, and that it

refused to rescind the transaction.

It is not necessary to consider whether Plaintiffs have pleaded a sufficient basis for their

TILA claims, because the claims are time-barred.  Where a plaintiff seeks money damages, a

one-year statute of limitations applies, from the day on which the underlying loan agreement is

executed.  Cmty. Bank of N. Va., 418 F.3d at 304-05, 15 U.S.C. § 1640(e).  If the remedy a

plaintiff seeks is rescission, the applicable time limit is three years after consummation of the

loan transaction or the sale of the property, whichever occurs first.  15 U.S.C. § 1635(f). The

time limit for seeking rescission is an absolute bar to a cause of action if the right is not exercised

within the three-year period.  See Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 505 (3d

Cir. 1998) (indicating that "the time limit for rescinding a loan transaction under . . . TILA

extinguishes the right itself, as opposed to the right to a remedy, and thus is not a typical statute

of limitations").  The three-year time limit is thus a statute of repose, which is not subject to

equitable tolling.  Cmty. Bank of N. Va., 622 F.3d at 301 n.18; see also Jones v. Saxon Mortg.,

Inc., 537 F.3d 320, 327 (4th Cir. 1998) ("Because § 1635(f) is a statute of repose, the time period

stated therein is typically not tolled for any reason").  The United States Supreme Court has held

that TILA "permits no federal right to rescind . . . after the 3-year period of § 1635(f) has run."

Beach v. Ocwen Fed. Bank, 523 U.S. 410, 419 (1998).

Here, Plaintiffs allege that they "gave a mortgage to [Lend-Mor] dated March 30, 2009."

Am. Compl. ¶ 18.  This is the mortgage they seek to rescind under TILA.  The complaint was

filed on December 28, 2012, which is more than three years the date the loan closed.  Plaintiffs

argue that the loan never consummated because the loan was never funded.  Thus, it is Plaintiffs'

position that the three-year period during which a borrower can seek rescission has still not yet

commenced.  It is clear from the Plaintiffs' Amended Complaint that some funds were

distributed pursuant to the 2009 reverse mortgage transaction.  For example, Plaintiffs allege that

"a Partial Release of the [prior] Mortgage was recorded on August 3, 2009."  Am. Compl. ¶ 17.

It is clear that the loan was not funded to the extent that Plaintiffs allege they were promised.

But this does not result in an open-ended opportunity to pursue a TILA claim without respect to

the statutory time frame.  The three-year window during which to bring a rescission claim under

TILA begins on the date of consummation of the loan transaction, which means "the time that a

consumer becomes contractually obligated on a credit transaction."  Guebara v. Saxon Mortg.,

Civ. No. 11-427, 2011 WL 1670762, at *2 (E.D. Cal. May 3, 2011) (quoting 12 C.F.R. §

226(a)(13)).  The time frame typically ends "three years after the loan closes or upon sale of the

secured property, whichever date is earlier."  Beach, 523 U.S. at 411.  Plaintiffs have cited no

law indicating that TILA's statutory time window does not begin to run if a loan is not funded

the way that a plaintiff expects it to be.  The Amended Complaint describes a loan transaction

and an extension of credit by the lender in connection with that loan, which constitutes a

consummation of the loan.  It repeatedly asks for rescission of the 2009 loan transaction, which

would not be necessary if no funds were disbursed and Plaintiffs had no contractual obligation

arising from the transaction.  Thus, Plaintiffs' TILA claim for rescission brought more than three years after the closing of the mortgage loan at issue are time-barred.

It is equally clear that Plaintiffs' claims for money damages under TILA are time-barred. Claims for actual and statutory damages under TILA may be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e); see also Beach, 523 U.S. at 412.  It is apparent from the face of the Amended Complaint that the alleged TILA violations all occurred in 2009.  Plaintiffs advance no argument as to why the one-year statute of limitations should not apply.  As these claims were not asserted within one year of the occurrence of the alleged violations, they are held to be barred by the statute of limitations.

### B.       Real Estate Settlement Procedures Act (RESPA)

Plaintiffs also allege that Financial Freedom violated RESPA when it failed to provide certain disclosures, closing documents, and notices to Plaintiffs, when it failed to establish an escrow account for the proceeds of the sale,[5] and when it did not respond to a written request from Plaintiffs.  Am. Compl. ¶ 52.  RESPA regulates the services lenders provide "in connection with a real estate settlement," which covers things such as title searches, title insurance, the preparation of documents, the origination of a federally related mortgage loan, the handling of the closing or settlement, and other services.  Freeman v. Quicken Loans, Inc., 132 S. Ct. 2034, 2038 (2012) (quoting 12 U.S.C. § 2602(3)).

Plaintiffs' claims under RESPA are also time-barred.  Like their TILA claims, claims under RESPA are subject to a limitations period of either one year or three years "from the date of the occurrence of the violation," depending on the type of violation.  12 U.S.C. § 2614. Plaintiffs repeat their argument that the claims are not time-barred because the loan never

---

[5] This is another instance where it is difficult to discern what the Amended Complaint is precisely alleging, as it does not describe the sale of property in conjunction with the loan involving Financial Freedom.

consummated.  However, claims under RESPA are not connected with the consummation of a

loan, unlike TILA rescission claims.  They are connected with the date of occurrence of the

violation.  Id.  Although none of the violations asserted by Plaintiffs in the Amended Complaint

are accompanied by an alleged date, all allegations, save for one, appear to clearly relate to either

the origination or assignment of the loan, or to the transfer of loan servicing, which were all

more than three years prior to the filing of this complaint.[6]  Further, Plaintiffs do not argue in

their opposition brief that any alleged RESPA violation took place within three years prior to the

filing of their initial complaint.

        The only RESPA allegation that is plausibly unconnected with the origination,

assignment, or transfer of the loan asserts that Financial Freedom failed "to respond to a

qualified written request from the borrower."  Am. Compl. ¶ 52.  This allegation appears to relate

to the requirement found in REPSA § 6 that requires loan servicers to respond to certain

borrower inquiries.  12 U.S.C. § 2605(e).  That provision requires that "[i]f any servicer of a

federally related mortgage loan receives a qualified written request from the borrower (or an

agent of the borrower) for information relating to the servicing of such loan, the servicer shall

provide a written response acknowledging receipt of the correspondence within 5 days . . . unless

the action requested is taken within such period."  12 U.S.C. § 2605(e)(1)(A).[7]

        In addition to not including the date when the qualified written request was allegedly

made, the Amended Complaint fails to allege any facts demonstrating what was included in the

written request, in order to show that Plaintiffs actually made a "qualified written request" as the

---

[6] Plaintiffs allege that the subject loan originated on March 30, 2009, was assigned to Financial Freedom Senior
Funding Corporation on June 9, 2009, and was further assigned to Mortgage Electronic Registration Systems, Inc.,
as nominee for Financial Freedom Acquisition LLC (the Financial Freedom entity that is a defendant in this matter)
on November 17, 2009.  Am. Compl. ¶ 18.  All of these dates are more than three years prior to the filing of the
initial complaint.
[7] The time limit for bringing a claim for a violation of 12 U.S.C. § 2605 is three years.  See 12 U.S.C. § 2614.

term is defined in the statute.  At least one Court in this district has dismissed a RESPA claim

alleging a qualified written request violation, where the pleading contained an almost identical

conclusory pleading that a "qualified written request" was made, because it was "pled in the

conclusory manner Iqbal and Twombly have made clear will not pass muster under Rule 8(a)."

O'Connor v. First Alliance Home Mortg., Civ. No. 12-111, 2012 WL 762351, at *2 (D.N.J. Mar.

6, 2012).  Thus, in addition to the three-year time bar, the Court finds that the qualified written

request allegation fails because it is nothing more than a threadbare conclusion that a violation

has occurred.  See Iqbal, 556 U.S. at 678.  Plaintiffs' RESPA claim against Financial Freedom

thus fails because all of their allegations are either time barred, fail to meet the applicable

pleading standards, or both.

## C.    Leave to Amend

Because the TILA and RESPA claims will be dismissed due to bring brought outside of

the statutory time limits, the Court finds that it would be futile for Plaintiffs to amend these

claims.  When amendment would be futile, a court may dismiss a claim with prejudice.  See In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  To the extent that

Plaintiffs may wish to amend their pleadings to state a claim under RESPA by describing a

"qualified written request" made within the three years prior to the filing of suit, the Court also

finds that amendment would be futile.  A previous court in this district found that amendment of

a RESPA qualified written request claim would be futile where, as here, "[t]he Complaint itself

contains no indication that the claim could be cured by amendment, and Plaintiffs give no

explanation at all as to how the claim might be salvaged."  O'Connor, 2012 WL 762351, at *2.

Further, the Amended Complaint is Plaintiffs' third attempt at pleading a viable cause of

action under RESPA and TILA.  As discussed earlier, after some defendants moved to dismiss

11

Plaintiffs' initial complaint, Plaintiffs moved for leave to file an amended complaint. At the time they filed the amended complaint, they were on notice of Financial Freedom's arguments as to the time limitations under TILA and RESPA. See Mot. Dismiss of Financial Freedom, Mar. 15, 2013 (ECF Doc. No. 17). Further, at the July 22, 2013 hearing before Judge Schneider, Plaintiffs' counsel acknowledged that he was aware of the defendants' objections that are now the subject of the instant motion, including the defendants' argument that the claims are time-barred. See Transcript of July 22, 2013 Hearing at 7 (Accurate Mot. Dismiss, Ex. B). Judge Schneider warned Plaintiffs' counsel that if he was given another opportunity to amend the complaint, and it was found deficient, the defendants would have "pretty good grounds to say . . . now we know it's futile, because plaintiff has already been on notice on two occasions." Id. at 11. He further warned Plaintiffs' counsel that "this probably is going to be your last chance" to amend the complaint to correct deficiencies. Id. at 18. Now, despite being on notice of the defendants' objection to their TILA and RESPA claims as being time-barred and as not meeting the applicable pleading requirements, and despite Judge Schneider's efforts to ensure that they were aware of the alleged deficiencies in their prior pleading attempts, Plaintiffs have not alleged facts supporting a viable cause of action under TILA or RESPA that is not time-barred. Thus, these claims will be dismissed with prejudice.

### D.      State Law Claims

As all of Plaintiffs' claims arising under federal law will be dismissed, and Plaintiffs have pleaded no other basis for jurisdiction,[8] the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3).

---

[8] In actuality, Plaintiffs have not properly pled jurisdiction in the Amended Complaint. The jurisdictional statement indicates that "[t]his Court has subject matter jurisdiction over all causes of action stated in this complaint pursuant to 28 U.S.C. §§ 1334 and 28 U.S.C. § 157." Am. Compl. ¶ 6. These statutes relate to jurisdiction over cases arising under the Bankruptcy laws. However, the Court interprets the Amended Complaint as attempting to assert federal question jurisdiction under 28 U.S.C. § 1331.

## IV.    CONCLUSION

For the foregoing reasons, Financial Freedom's motion will be **GRANTED IN PART**.

Count I and Count VI of Plaintiffs' Amended Complaint, alleging TILA and RESPA claims,

respectively, will be **DISMISSED WITH PREJUDICE**.  Because the Court will decline to

exercise jurisdiction over Plaintiffs' state-law claims, Accurate Title's motion will be

**DISMISSED AS MOOT**.  An accompanying Order shall issue.


Dated: 4/1/2014                                        /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge